AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

SAMSUNG GALAXY S7 CELLPHONE MODEL SMG891A IMEI 358518071016546 THAT IS STORED AT PREMISES CONTROLLED BY THE FBI

Case No. 3:19 mj 509

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(3) | Possession of a firearm by an unlawful user of a controlled substance or by a person addicted to a controlled substance |
| 18 U.S.C. § 922(a)(6) | false statement regarding firearms |
| 18 U.S.C. § 924(a)(1)(A) | false statement regarding firearms |
| 18 U.S.C. § 1001 | false statement |
| 21 U.S.C. § 844 | unlawful possession of a controlled substance |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

P. Andrew Gragan, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 08/16/2019

_____
*Judge's signature*

City and state: Dayton, Ohio

Hon. Michael J. Newman, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is a Samsung Galaxy S7 cellphone Model SMG891A IMEI 358518071016546, as depicted in the picture below, hereinafter the "Device." The Device is currently located at FBI - Electronic Device Analysis Unit (EDAU), located at Building 27958A, Quantico, Virginia 22135.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

1.　　All records on the Device described in Attachment A that relate to violations of:

- **18 U.S.C. § 922(g)(3)**
- **18 U.S.C. § 922(a)(6)**
- **18 U.S.C. § 924(a)(1)(A)**
- **18 U.S.C. § 1001**
- **21 U.S.C. § 844**

and involve **Conner Stephen BETTS (BETTS)** since **2013**, including:

a.　any information related to the purchase, use, or possession of firearms;

b.　any information related to the purchase, use, or sale of controlled substances;

c.　any information related to the types, amounts, and prices of controlled substances or firearms purchased, used, or trafficked as well as dates, places, and amounts of specific transactions;

d.　any information related to sources of controlled substances or firearms (including names, addresses, phone numbers, or any other identifying information);

e.　any information recording **BETTS'** schedule or travel from 2013 to the present;

f.　all bank records, checks, credit card bills, account information, and other financial records.

g.　records of Internet Protocol addresses used;

h.　records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

1

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SAMSUNG GALAXY S7 CELLPHONE MODEL SMG891A IMEI 358518071016546 THAT IS STORED AT PREMISES CONTROLLED BY THE FEDERAL BUREAU OF INVESTIGATION | Case No. 3:19 mj509 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, P. Andrew Gragan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation ("FBI"), Cincinnati Division. I have been employed as a Special Agent with the FBI since May 2016.  I have received training in national-security investigations and criminal investigations, and I have conducted investigations related to domestic and international terrorism, white-collar crimes, drug trafficking, firearms, public corruption, and violent crimes.  As part of these investigations, I have participated in physical surveillance and records analysis, worked with informants, conducted interviews, served court orders and subpoenas, and executed search warrants.

3.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses. This affidavit is

1

intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.     The property to be searched is a Samsung Galaxy S7 Cellphone Model SMG891A IMEI 358518071016546 (as pictured in Attachment A), hereinafter the "Device." The Device is currently located at FBI - Electronic Device Analysis Unit (EDAU), located at Building 27958A, Quantico, Virginia 22135.

5.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.     On or about August 4, 2019, at approximately 1:00 a.m., Dayton Police Officers responded to an active shooter in the 400 block of East Fifth Street in Dayton, Ohio. Officers observed a male, later identified as **Connor BETTS (BETTS)**, actively engaged in shooting into a crowd of individuals located at the 400 block of East Fifth Street in Dayton, Ohio, a city in the Southern District of Ohio.

7.     The Officers were able to return fire towards the suspect in order to stop the threat. Multiple shots were fired, and **BETTS** was killed. At this time ten (10) people, including **BETTS**, are deceased resulting from the shooting, along with multiple individuals injured. The injured were transported to multiple local area hospitals. **BETTS** was located on the scene wearing body-armor and headphones. Officers were able to identify the weapon as an assault rifle style firearm. Officers recovered a black Samsung Cell Phone from **BETTS'** back pocket, later determined to be a Samsung Galaxy S8 Active cellphone.

2

8.     In the morning hours of August 4, 2019, the FBI was able to identify the shooter at the scene based on finger prints. The shooter was identified as **BETTS.**

9.     On or about August 4, 2019 a Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Firearms Trace was conducted on the firearm used by **BETTS**, further described as an Anderson AM-15 5.56mm with serial number 18309695. The purchaser was **Connor Stephen BETTS**, with an address of 2250 Creekview Place, Bellbrook, Ohio, and date of birth (DOB) of October 28, 1994, and a Social Security Number (SSN) with the last four digits of 6211. Ohio Bureau of Motor Vehicle (BMV) records show the same address, DOB, and last four digits of the SSN for **BETTS.**

10.     Records obtained from a Dayton area Federal Firearm Licensed dealer included an ATF Form 4473, which based on my training and experience I know is required in order to complete the transaction of purchasing a firearm from a licensed dealer, for an Anderson Mfg model AM-15 receiver with serial number 18309695, which, based on information provided by ATF, was manufactured outside the state of Ohio. The form transferee/buyer was listed as **Connor Stephen BETTS** with the aforementioned address, DOB, and SSN. The form contained contact information for **BETTS,** including a phone number. The transfer of the firearm from the dealer to **BETTS** was completed on April 12, 2019.

11.     Box 11e of ATF Form 4473 states, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? Warning: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." The form contained warnings concerning the consequences of answering the

3

questions on the form falsely. **BETTS'** Form 4473 was checked "No" in response to the question in box 11e.

12.     Records from the same FFL dealer also showed an ATF Form 4473 for a Taurus Pt.111 G2C 9mm pistol with serial number TLR08219 was purchased by **BETTS** on November 23, 2018. The response to box 11e was checked "No."

13.     On or about August 4, 2019, Dayton Police Officers executed a search warrant, issued by the Dayton Municipal Court, on a 2007 Toyota Corolla bearing Ohio license plate number GNM1586. The vehicle was parked near the scene of the shooting and is believed to have been used by **BETTS** for transportation to the scene and for storage of the weapon he used in the shooting.  Ohio BMV records show **BETTS'** father as the registered owner.  Among other items, officers recovered a H&R 12 gauge Pardner Pump shotgun.

14.     On or about August 4, 2019 an ATF Firearms Trace was conducted on the shotgun, further described as a Hawk Industries Inc. H&R Pardner Pump 12 gauge shotgun with serial number NZ897689. The purchaser was **Connor Stephen BETTS**, with an address of 2250 Creekview Place, Bellbrook, Ohio, and date of birth (DOB) of October 28, 1994, and last four of Social Security Number (SSN) 6211, identifying information consistent with the aforementioned BMV and other records.

15.     Records obtained from a Dayton area Federal Firearm Licensed (FFL) dealer included an ATF Form 4473 for an H&R Pardner 12 gauge shotgun with serial number NZ897689. The form transferee/buyer was listed as **Connor Stephen BETTS** with the aforementioned address, DOB, and SSN. **BETTS'** phone number on the form is the same number listed on the form mentioned in paragraph 10 above.  The transfer of the firearm from

4

the dealer to **BETTS** was completed on June 21, 2019. **BETTS'** Form 4473 was checked "No" in response to the question in box 11e.

16.     On or about August 4, 2019, **BETTS'** corpse was taken to the Montgomery County Coroner for autopsy. During the autopsy, Dayton Police Officers removed property from the pockets of **BETTS,** including an approximate three inch long black straw with a baggie attached to the end of it by a rubber band. Inside the baggie was a white powder, which the seizing officers, based on their training and experience, believe to be cocaine based on its appearance. The suspected cocaine was submitted to Miami Valley Regional Crime Lab (MVRCL) for testing. MVRCL reported, on or about August 9, 2019, that the substance was cocaine. On or about August 15, 2019, MVRCL reported finding cocaine, Xanax, and alcohol in **BETTS'** system.

17.     On or about August 4, 2019, the FBI interviewed a friend of **BETTS,** who was with **BETTS** at the scene of the shooting and was shot and wounded by **BETTS**, and who for the purpose of this affidavit will be referred to as C.B. C.B. advised that around July 26 to 28, 2019, **BETTS** indicated to C.B. that he had relapsed with cocaine and it was not interacting well. C.B. also stated that **BETTS** had also invited him to go the range and shoot his AR, which C.B. did not do.

18.     On or about August 4, 2019, a large national retail store, with a Federal Firearms License to deal in firearms, provided information to the FBI of weapon purchases made by **BETTS.** The weapons are further described as an H&R 1228 Pardner 12 gauge shotgun with serial number NZ682493, purchased on May 31, 2013; a DPMS Panther Arms, Inc, M4 Sportical .223-5.56 caliber rifle, with serial number L4017969, purchased on November 26, 2013; and a Mossberg 702 Plinkster 22LR rifle with serial number EML4019811, purchased on May 3, 2015.

Records obtained from the retail store included ATF Form 4473s for all three firearms. Box 11e was checked "No" on all three Form 4473s.

19.     On or about August 5, 2019, the FBI interviewed a high school girlfriend of **BETTS,** who for the purpose of this affidavit will be referred to as H.S.  H.S. dated **BETTS** off and on in high school.  She advised the FBI that **BETTS** had abused a number of drugs, including Adderall, Xanax, cocaine, and marijuana. H.S. indicated that **BETTS** purchased pills and cocaine from a manager at the restaurant **BETTS** worked at that time. H.S. advised that **BETTS** had told others he could sell cocaine to them, and that during 2013 to 2014, **BETTS** talked about having hallucinations and feeling like bugs were under his skin.

20.     On or about August 5, 2019, the FBI interviewed another former, but more recent girlfriend of **BETTS**, who for the purpose of this affidavit will be referred to as C.J.  C.J. knew **BETTS** since at least January 2019, having been classmates at a local college.  C.J. dated **BETTS** from at least March 2019, until they severed their relationship in or about May 2019. C.J. indicated that **BETTS** was previously addicted to methamphetamine and was a recovering meth addict. **BETTS** had told her he quit "cold turkey" after going on vacation with his family and he was unable to obtain illegal narcotics.

21.     On or about August 4 to 7, 2019, the FBI interviewed multiple individuals associated with **BETTS.**  A co-worker, who for the purpose of this affidavit will be referred to as N.G., advised he was aware **BETTS** used to have a methamphetamine addiction approximately three years ago. A co-worker, who for the purpose of this affidavit will be referred to as K.G., advised that **BETTS** had told K.G. that he used to have a drug abuse problem during high school. When K.G. asked what type of drugs **BETTS** was abusing, **BETTS** mentioned huffing and cocaine. A bandmate of **BETTS,** who for the purpose of this affidavit will be referred to as

6

J.C., advised that **BETTS** had told J.C. he used to use methamphetamine. A co-worker of

**BETTS,** who for the purpose of this affidavit will be referred to as C.W., advised that **BETTS**

had done methamphetamine in the past. C.W. believed **BETTS** had been clean for approximately

four years. A co-worker of **BETTS,** who for the purpose of this affidavit will be referred to as

A.G., believed that **BETTS** had a history of drug abuse.

22.     On or about August 7, 2019, the FBI interviewed an acquaintance of **BETTS,**

who for the purpose of this affidavit will be referred to as J.E. J.E. indicated that he and **BETTS**

hung out at least once a month from 2014 through 2017. J.E. indicated that **BETTS** was hardly

ever sober during this time and used heroin, cocaine, methamphetamine, and prescription

narcotics. J.E. said that **BETTS** would often show up to his home "messed up."

23.     On or about August 7, 2019, the FBI interviewed a former co-worker of **BETTS**,

who for the purpose of this affidavit will be referred to as E.S. E.S. advised that on or about

August 2, 2019, at approximately 4:45p.m., **BETTS** came into her place of employment and

bought a beer. Before he left, **BETTS** made the comment, "I just popped a xanny, we'll see how

it goes." Based on my training and experience, I know that the term "xanny" is often used as

street terminology for Xanax, a controlled substance.

24.     On or about August 7, 2019, the FBI interviewed an acquaintance of **BETTS**,

who for the purpose of this affidavit will be referred to as J.E. J.E. advised that during the

timeframe he and **BETTS** were acquainted, which was late 2018, J.E. believed **BETTS** was

using various drugs, including cocaine, methamphetamine, heroin, and molly.

25.     On or about August 8, 2019, the FBI interviewed a friend of **BETTS**, who for the

purpose of this affidavit will be referred to as E.K.  E.K. informed the FBI that he and **BETTS**

had done "hard drugs," marijuana, and acid together four to five times a week during 2014 to 2015.

26.     Based on training and experience, I know that drug users frequently use wireless/cellular phones to carry out their activities. They use cellular phones to communicate with suppliers and their associates. It is common for those involved in illicit drug use to have multiple phones because certain phones may be used only for certain purposes. For instance, a drug user may use one phone just to speak to his supplier, while using a different phone to speak to members of his/her family or others. I also know that drug users commonly text message suppliers to discuss matters such as meeting locations, prices, and other information needed to carry out the sale of drugs. They commonly store phone numbers for their associates and suppliers in the electronic phone book/contacts list, often under alias or code names. Based on training and experience, I also know that individuals who purchase firearms will often use wireless/cellular telephones, including digital cameras located on their wireless/cellular telephone, to communicate about the purchase of firearms and to take photographs or videos of themselves, their location, and their firearms, which can be electronically stored on the cellular phone.

27.     The Device is currently in the lawful possession of the FBI. It came into the FBI's possession in the following way: On or about August 4, 2019, Dayton Police Department (DPD) executed a search warrant issued by the Dayton Municipal Court for **BETTS'** residence, located at 2250 Creekview Place in Bellbrook, Ohio. DPD seized the Device pursuant to that warrant. The Device was found in **BETTS'** bedroom on his desk. DPD obtained a search warrant, issued by the Dayton Municipal Court, for the Device. The FBI took custody of the Device in order to assist DPD in the execution of that warrant. Pursuant to that warrant, the FBI

8

shipped the Device to FBI – EDAU, in order to access and image the Device. However, the FBI has not yet examined its contents. Therefore, while the FBI might already have all necessary authority to search and examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

28.     The Device is currently in storage at FBI - Electronic Device Analysis Unit (EDAU), located at Building 27958A, Quantico, Virginia 22135. In my training and experience, I believe the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the FBI.

## TECHNICAL TERMS

29.     Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

9

b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

30.    Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a computer that can access the internet and store internet history, IP Addresses, communications, photos, documents, and other data, In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

31.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

32.    There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or

10

years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

33.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

11

the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

35.  *Manner of execution.*  Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

13

**CONCLUSION**

36.     Based on the foregoing, I believe there is probable cause to believe that crimes have been committed, namely, violations of 18 U.S.C. § 922(g)(3) (Possession of a firearm by an unlawful user of a controlled substance or by a person addicted to a controlled substance), 18 U.S.C. § 922(a)(6) (false statement regarding firearms), 18 U.S.C. § 924(a)(1)(A) (false statement regarding firearms); 18 U.S.C. § 1001 (false statement), and 21 U.S.C. § 844 (unlawful possession of a controlled substance), and that evidence, contraband, fruits of crime, and instrumentalities of crime will be found in the Device.

37.     This Court has jurisdiction to issue the requested warrant under Rule 41 of the Federal Rules of Criminal Procedure.  Specifically, Rule 41(b)(3) provides that "[a]t the request of a federal law enforcement officer or an attorney for the government:  a magistrate judge—in an investigation of domestic or international terrorism—with authority in any district in which activities related to the terrorism may have occurred has authority to issue a warrant for a person or property within or outside that district."  "Domestic terrorism" carries the same meaning as set forth in 18 U.S.C. § 2331.  Fed.R.Crim.P. 41(a)(2)(D).  That provision, in turn, namely, 18 U.S.C. § 2331(5), defines "domestic terrorism" as "activities that—(A) involve acts dangerous to human life that are a violation of the criminal laws of the United States or of any State; (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily within the territorial jurisdiction of the United States."  The FBI is conducting a domestic terrorism investigation to determine whether **BETTS'** shootings on August 4, 2019, in Dayton, Ohio, within the territorial jurisdiction of the United States, and which involved acts dangerous to human life that are a

14

violation of the criminal laws of the United States or of the State of Ohio, was intended to intimate or coerce a civilian population, to influence the policy of a government by intimidation or coercion, or to affect the conduct of a government by mass destruction and assassination. This requested warrant is part of that investigation.

38.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

P. Andrew Gragan
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on August 16, 2019, in Dayton, Ohio.

HON. MICHAEL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

15

## **ATTACHMENT A**

The property to be searched is a Samsung Galaxy S7 cellphone Model SMG891A IMEI 358518071016546, as depicted in the picture below, hereinafter the "Device." The Device is currently located at FBI - Electronic Device Analysis Unit (EDAU), located at Building 27958A, Quantico, Virginia 22135.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.



## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of:

- **18 U.S.C. § 922(g)(3)**
- **18 U.S.C. § 922(a)(6)**
- **18 U.S.C. § 924(a)(1)(A)**
- **18 U.S.C. § 1001**
- **21 U.S.C. § 844**

and involve **Conner Stephen BETTS** (**BETTS**) since **2013**, including:

a.  any information related to the purchase, use, or possession of firearms;

b.  any information related to the purchase, use, or sale of controlled substances;

c.  any information related to the types, amounts, and prices of controlled substances or firearms purchased, used, or trafficked as well as dates, places, and amounts of specific transactions;

d.  any information related to sources of controlled substances or firearms (including names, addresses, phone numbers, or any other identifying information);

e.  any information recording **BETTS'** schedule or travel from 2013 to the present;

f.  all bank records, checks, credit card bills, account information, and other financial records.

g.  records of Internet Protocol addresses used;

h.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

1

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.